UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARGARET A. BLANKENSHIP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 1:16cv222 |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(I). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act

2

through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since December 19, 2008, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: low back pain and poly-arthritis; carpal tunnel syndrome with a history of right-sided release surgery and trigger thumb of the left hand; obesity; hyperlipidemia; reported heart palpitations; allergic rhinitis; depression; anxiety; and post-traumatic stress disorder (PTSD)(20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) (i.e. lifting, carrying, pushing, and pulling up to 20 pounds occasionally and 10 pounds frequently; sitting up to 6/8 hours in an eight hour workday), except for the following additional limitations: she can do only occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, and scaffolds; frequent bilateral handling and fingering; must avoid concentrated exposure to extremes of temperature, humidity, wetness, and pulmonary irritants (i.e. fumes, odors, dust, gases, poorly ventilated areas and chemicals); must avoid concentrated exposure to workplace hazards such as dangerous moving machinery, work at unprotected height and work on slippery/uneven/moving surfaces. Mentally, the claimant is precluded from understanding, remembering or carrying out detailed or complex job instructions; cannot perform tasks requiring intense/focused attention for prolonged periods of time; limited to occasional work in close proximity to others to minimize distractions; must have work at a flexible pace (where the employee is allowed some independence in determining either the timing of different work activities or pace of work); allow only casual/superficial interaction with others including supervisors, coworkers and the general public; and no exposure to intense or critical supervision.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 3, 1967, and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

3

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 19, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 20-29)

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on December 8, 2016. On February 22, 2017, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her

> former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

The medical history is somewhat sparse. As noted, the ALJ found that the Plaintiff has the following severe impairments: poly-arthritis in the lower back; right carpal tunnel syndrome; left carpal tunnel syndrome; left trigger thumb; acromioclavicular degenerative disk disease; right shoulder bursitis; obesity; hyperlipidemia; heart palpitations; depression, anxiety, and post-traumatic stress syndrome. The ALJ found the following impairments non-severe: hypertension; chronic obstructive pulmonary disease, and allergic rhinitis. Plaintiff claims that she also suffers from lumbar radiculopathy, trochanteric bursitis, left knee problems, ankle degeneration and pain, chronic gastritis with epigastric pain upon palpation, and a weekly migraine headache.

In support of reversal or remand, Plaintiff first argues that the ALJ's Step 5 finding regarding the existence of other jobs in significant numbers in the national economy is not supported by substantial evidence.

Substantial evidence supports an ALJ's finding at step five of the sequential evaluation — that jobs exist in significant numbers in the national economy that the claimant, given her age, education, work experience, and RFC, can perform — when the ALJ bases that finding on the testimony of a vocational expert (VE) in response to a hypothetical question that accurately sets

5

out the claimant's functional limitations as supported by the evidence. *See, e.g., Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002) (finding that the ALJ did not err in relying on the VE's testimony at step five "because [the hypothetical question] reflected [the claimant's] impairments to the extent that the ALJ found them supported by the evidence in the record").

Plaintiff argues that the ALJ, or the VE, did not properly explain the methodology used to arrive at the job numbers provided by the VE and that the VE improperly relied on his professional experience to explain the reduction in job numbers for an amended hypothetical question. According to Plaintiff, the ALJ, or the VE, was required to provide a rational basis for the methodology and thus to show that it "was not a mere fabrication" (Pl. Br. 8). Further, according to Plaintiff, "[o]nly the detailed exposition of a methodology that is rationally based can be meaningfully reviewed" (Pl. Br. 9).

Defendant acknowledges the concerns articulated by the Seventh Circuit, and reiterated by Plaintiff, regarding calculation of the number of jobs available in the national economy and VEs' general reliance on their experience. Nevertheless, Plaintiff has not shown a legal requirement that the ALJ, or the VE, explain the methodology used by Skilltran (the labor market software used by the VE). *See Hoffman v. Colvin*, No. 15-C-940-WCG, 2016 WL 5107063, at *6 (E.D.Wisc. Sept. 20, 2016) (stating, while discussing *Alaura v. Colvin*, 797 F.3d 503 (7th Cir. 2015), and *Herrmann v. Soc. Sec. Admin.*, 772 F.3d 1110 (7th Cir. 2014), that, although "[i]t is true that the Seventh Circuit has questioned how vocational experts obtain their statistics," "the court has not explicitly reversed an ALJ's conclusion simply because the vocational expert's testimony did not explain where his statistics were derived").

The district court's discussion in *Weir v. Colvin* is instructive, though it involves a

6

different methodology. In *Weir*, the VE testified that she relied in part on the Occupational Employment Statistics published by the Bureau of Labor Statistics and that she, using those raw numbers, relied on her professional experience to offer rough estimates of the numbers of jobs available. No. 15-cv-532-JDP, 2016 WL 4083524, at *2 (W.D.Wisc. Aug. 1, 2016). The court noted the aforementioned concerns of the Seventh Circuit and described the plaintiff's argument as "well taken." *Id.* at *3. Importantly, however, the court then explained that the plaintiff's "criticism of the VE's methodology is not a basis for remand until appellate precedent instructs that relying on the methodology is reversible error." *Id.* Thus, the court concluded that the VE's testimony, though "not genuinely persuasive," "pass[ed] muster under current law." *Id.*

In the present case, the VE explained that he used Skilltran and that he based the reduced numbers on his 40 years of professional experience and his observation of the performance of the jobs (see Tr. 461). Defendant argues that it was not an error that the VE did not utilize a survey involving the particular jobs at issue (see Tr. 462). As in *Lesner v. Colvin*, it is sufficient here that "the VE did provide the source of h[is] numbers, namely SkillTRAN, publicly available labor market software. [H]e was not relying solely on h[is] personal experience or on any other untestable means." No. 12 C 7201, 2015 WL 5081267, at *8 (N.D.Ill. Aug. 24, 2015).

Moreover, although Defendant acknowledges that she bears the burden of proof at step five, Defendant notes that Plaintiff "provides no basis for th[e] Court to find that h[er] limitations would reduce the available . . . jobs below a sufficient number." *Watt v. Colvin*, No. CV 15-12833, 2016 WL 6651855, at *7 (E.D.Mich. July 13, 2016), report and recommendation adopted sub nom. *Watt v. Comm'r of Soc. Sec.*, No. 15-CV-12833, 2016 WL 4536424 (E.D.Mich. Aug. 31, 2016). In the present case, the VE testified, and the ALJ accordingly found, that there

7

are about 200,000 bakery-production jobs, 100,000 usher jobs, and 414,000 rental-consultant jobs in the national economy (Tr. 486–87, 452) — numbers that dwarf the minimum threshold for significance. *See Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (citation omitted) ("As few as 174 jobs has been held to be significant, and it appears to be well-established that 1,000 jobs is a significant number."). Accordingly, this court holds that substantial evidence supports the ALJ's finding at step five.

Next, Plaintiff argues that the ALJ erred in failing to give controlling weight to a treating physician's medical opinion. Plaintiff argues that Dr. Kashyap opined, in the manner of a medical opinion, that Plaintiff could not drive within four hours of taking cyclobenzaprine and that the ALJ erroneously failed to give this opinion controlling weight.

Defendant, however, argues that the statement in the treatment notes, to which Plaintiff refers, does not constitute a medical opinion of Plaintiff's functional capacity. Nurse Shire wrote on January 28, 2014, in reference to Plaintiff's January 14, 2014 follow-up visit with Nurse Yoder, that Plaintiff was started on cyclobenzaprine, one 10-mg tablet twice daily, as needed (Tr. 921). The entry contains the instruction: "do not drive within 4 hours of taking" (*id.*). However, Nurse Yoder wrote a letter, dated July 18, 2014, setting out Plaintiff's medical conditions (not noting any medication side effects) and expressly stating, "Dr. Kashyap has not noted any current restrictions or limitations to Margaret's abilities at this time" (Tr. 908).

Moreover, Plaintiff does not establish how often she took this medication. For context, Nurse Shire noted on October 16, 2013, that Plaintiff reported that she took Flexeril (a brand name for cyclobenzaprine) before going to bed and woke up sleepy (Tr. 922). However, it is not established, or even alleged, that this reported sleepiness was a side effect of Flexeril taken the

8

night before. Additionally, Plaintiff does not appear to have complained of any side effects from cyclobenzaprine. The treatment notes from Nurses Shire and Yoder, as well as Dr. Kashyap, from January 2014 through July 2014, do not appear to indicate either complaints of side effects or treatment for them (see Tr. 910–21). Thus, Plaintiff's argument seems to rely on the possibility of side effects (see Pl. Br. 10 n.21) (citing the Mayo Clinic's summary of possible side effects).

Although Plaintiff alleges error in the RFC's lack of "limitations in relation to driving" (Pl. Br. 10), the record evidence does not support any driving-related limitation. Plaintiff's March 2012 function report indicates that she could drive (at least for short trips) (Tr. 234, 476), and Plaintiff herself testified in January 2016 that she had a driver's license, was able to drive, and had no restrictions on her license (Tr. 392). Further, Plaintiff testified that she took pain medication only when she felt that she needed it (Tr. 411), and she claimed as side effects from her medications (overall) only feeling tired and having headaches (see Tr. 419). Plaintiff attributes the headaches to Vicodin (*see id.*). The treatment notes, including examination findings at Dr. Kashyap's office from January 2014 through July 2014, after Plaintiff had been started on the cyclobenzaprine, consistently do not indicate fatigue or any other abnormal finding — dizziness, for example — reasonably attributable to cyclobenzaprine (see Tr. 910–21).

Plaintiff argues that it "defies logic that a person under the influence of cyclobenzaprine could climb scaffolds, ropes, and ladders . . ." occasionally (Pl. Br. 11). Again, however, Plaintiff has not established how often she took the medication or that she experienced any side effects from it. Plaintiff implicitly acknowledges this conclusion in arguing that the ALJ must further develop the record to resolve the "realistic potentiality" that she was limited in excess of the ALJ's RFC finding (Pl. Br. 10–11). But it was and is Plaintiff's burden to prove functional

9

limitation. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (stating that the plaintiff bears the burden of proof through step four of the sequential evaluation), as amended (Dec. 13, 2000). Here, the ALJ clearly satisfied the requirement that he make a reasonable effort to ensure that the record contained sufficient information for him to assess Plaintiff's RFC and make a disability decision. *See Martin v. Astrue*, 345 F. Appx 197, 201 (7th Cir. 2009) (citations omitted). The record contains ample evidence, Plaintiff had ample opportunity to testify at the hearing, and Plaintiff's counsel had the opportunity to — but did not — ask Plaintiff about side effects specifically from cyclobenzaprine or ask the ALJ to hold the record open for submission of additional evidence. Accordingly, this court does not find error in the ALJ's decision to not consider medication side effects as a limiting condition.

Next, Plaintiff argues that the ALJ improperly "played doctor" in his discussion of two x-rays and Plaintiff's pain medication. Defendant, in response, contends that the ALJ did not do here what the ALJ did in *Rohan v. Chater*, 98 F.3d 966 (7th Cir. 1996), the case that Plaintiff cites at the outset of her argument. In *Rohan*, "the ALJ simply indulged his own lay view of depression for that of Dr. Shapiro. Reports of the other consulting physicians were simply ignored." 98 F.3d at 971. Here, however, Plaintiff identifies no interpretation of the evidence from a medical source that the ALJ disregarded.

With respect to the x-rays, the ALJ's discussion was entirely reasonable. Plaintiff objects to the ALJ's interpreting the January 2009 x-ray of the lumbar spine, compared with the September 2004 x-ray, and explaining how the findings might indicate (the lack of) functional limitation (Tr. 307, 481). But Dr. Kashyap interpreted the x-ray: it was unremarkable (Tr. 307); the ALJ merely repeated what Dr. Kashyap said (Tr. 481). As for interpreting the interpretation, it

10

is, again, entirely reasonable for the ALJ to have explained that unremarkable x-ray of the lumbar spine "suggest[s]" minimal functional limitation in standing, walking, and sitting (*see id*.). The ALJ did not say that the x-ray conclusively demonstrates minimal functional limitation. Rather, this objective evidence was one factor among several that the ALJ properly considered in assessing Plaintiff's RFC (see Tr. 479–85).

The ALJ's discussion was also reasonable with respect to the limiting effects of Plaintiff's pain medication. Defendant notes that the ALJ acknowledged that Plaintiff had "polyarthritis that can be expected to cause some pain, particularly with heavier lifting and carrying," which is "particularly why [the ALJ] limited her to the light level of exertion" (Tr. 481). The ALJ explained that Plaintiff's testimony regarding her pain medication "suggests a moderate level of pain that is not as limiting as the claimant has testified" (id.). Both parts of this statement are reasonable. First, Plaintiff herself testified that her pain was 5/10 — that is, moderate — when she took her medication (Tr. 410, 481). Second, such moderate pain, as well as the prescription of mostly non-narcotic medications (Vicodin being the only narcotic), is generally inconsistent with the extreme functional limitations that Plaintiff alleged, such as the ability to walk only half a block, sit for only about 15 minutes, and stand for only about 10 minutes before experiencing severe lower-back pain and/or left-leg numbness (see Tr. 422–24).

As the ALJ noted, "Dr. Kashyap has given the claimant some injections in her right shoulder and left hip for pain, but she has not had any injections in her back" (Tr. 481, 908–39). As the ALJ further noted, the record does not indicate that Dr. Kashyap referred Plaintiff for a surgical opinion regarding her back or advised Plaintiff to follow up with a pain-management specialist, even when she had health insurance, "which also suggests that back and radicular pain

into the left leg are not as limiting as the claimant alleges" (Tr. 481). Additionally, as noted, it is Plaintiff's burden to prove functional limitation, *Clifford*, 227 F.3d at 868, not the ALJ's burden to prove the lack of functional limitation.

This court finds that the ALJ's statements do not constitute improperly "playing doctor", and consequently this court finds that substantial evidence supports the ALJ's decision.

## Conclusion

On the basis of the foregoing, the ALJ's decision is hereby AFFIRMED.


Entered: June 29, 2017.


                                                s/ William C. Lee
                                                William C. Lee, Judge
                                                United States District Court